ELISHA MACK, Respondent, v. THOMAS PHELAN, Administrator, etc., Appellant.

The provision of the statute in reference to chattel mortgages (§ 3, chap. 279, Laws of 1833), providing that, unless such a mortgage is re-filed, as prescribed, it shall cease to be a lien as against subsequent purchasers in good faith, after the expiration of a year from the time of filing, does not relieve a purchaser having actual notice of a mortgage when he purchased, which, at the time it was executed, accurately described the mortgaged property, although the appearance of the property had, for the purpose of deception, without the fault of the mortgagee, been changed by the mortgagor.

In November, 1871, C. executed to H. a chattel mortgage on three machines, which were described by numbers and other descriptive particulars, and were stated to be in the possession of the mortgagor in a certain mill. In October, 1872, the mortgagee attempted to renew the mortgage by refiling a copy ; this was held not to be effectual, because the paper filed was not an exact copy ; it, however, stated accurately the debt and the mortgaged property, and the statement signed by the mortgagee stated correctly the amount unpaid. C. sold the machines to A. H. H. & Co. ; immediately prior to the purchase the agent of that firm saw and read the original mortgage, and the copy filed as a renewal,

but was informed by the mortgagor that it did not cover the machines in question, and to support this he referred to the fact that the numbers of the machines he was about to sell did not correspond with the numbers as stated in the mortgage; these had in fact been removed, and other numbers appeared upon the machines. The agent, satisfied with this information, concluded the purchase without making further inquiry or going to the mill. In an action for the conversion of the machines, *held*, that the purchasers were chargeable with notice of the mortgage, and of the legal rights of the mortgagee under it; that the paper filed as a copy, although inaccurate, was, with the statement of the mortgagee accompanying it, notice to them that the original mortgage was as between the parties a subsisting security, and the debt secured unpaid; and that it was not essential that they should have had actual knowledge, at the time of the purchase, that the machines were those embraced in the mortgage.

C. received for the machines a sum of money, and three other machines; these latter were stored by him with other machinery covered by the mortgage; he procured insurance on all of the machinery, loss, if any payable to H., as mortgagee. The policies were forwarded to H., who lived in Missouri. A loss having occurred, H. came to this State to collect the insurance. He then learned all the facts of the sale and exchange, of which before he had been ignorant. After acquiring such knowledge H. obtained from C. a power of attorney and assignment of all his interest in the policies. H. then informed A. H. H. & Co. of his claim upon, and demanded the three machines, offering, if they would surrender them, to transfer the claim for insurance; this they refused, and H. thereupon settled with the insurance companies. *Held*, that there was no ratification, either in law or fact, of the acts of C., and no estoppel upon H. from asserting his claim under the mortgage.

After the adjustment of the loss H. sold the old iron, the remnants of the property. *Held*, that this did not amount to a ratification of the acts of C.

*It seems* that the most A. H. H. & Co. could claim was that H. should account for the portion of the sum received on sales realized from the remnants of machines sold by them.

(Argued March 8, 1883; decided March 27, 1883.)

APPEAL from a judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made the first Tuesday of May, 1882, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

This action was originally brought by plaintiff against Patrick Butler, as surviving member of the firm of A. H. Hart & Co., to

recover damages for the alleged conversion of three machines used in the manufacture of flax. Butler having died during the pendency of the action, his administrator, the present defendant was substituted. Plaintiff claimed, as assignee of one Hayward, who claimed as mortgagee under a chattel mortgage, executed to him by one Crane.

The material facts are stated in the opinion.

*E. Countryman* for appellant. The referee was right in holding that the chattel mortgage was not properly renewed, as a true copy thereof was not refiled. (*Moredon* v. *Cornell*, 62 N. Y. 215; *Porter* v. *Parmley*, 52 id. 185; *Ely* v. *Carnley*, 19 id. 496; *Patterson* v. *Gillies*, 64 Barb. 563; *Stackhouse* v. *Allard*, 4 T. & C. 279.) Actual notice to be effectual should be equivalent to actual knowledge, and cannot be inferred even from an opportunity of knowledge unless the opportunity be such that the inference of knowledge is conclusive. (*Foster* v. *Gillespie*, 68 Mo. 644; *Hill* v. *Gillman*, 39 N. H. 88; *Stearns* v. *Gage*, 79 N. Y. 103, 107; *Sawyer* v. *Pennell*, 19 Me. 167, 173; *Bacon* v. *Van Schoonhoven*, 87 N. Y. 446, 452; *Farley* v. *Carpenter*, 27 Hun, 359, 361; *Bowman* v. *Roberts*, 58 Miss. 126; *Tootle* v. *Lyster*, 26 Kan. 590.) The referee erred in his legal conclusion that the facts found or proved upon the trial did not constitute a ratification by Hayward of the sale of the property by Crane to said firm, nor an estoppel as against the claim of the plaintiff. (*Bennett* v. *Judson*, 21 N. Y. 239; *Elwell* v. *Chamberlain*, 31 id. 611, 619; *Murray* v. *Binninger*, 3 Abb. Ct. of App. Dec. 336; *Carter* v. *Hamilton*, Selden's Notes, 251; *Leslie* v. *Wiley*, 47 N. Y. 648; *Lowenstein* v. *McIntosh*, 37 Barb. 251; *Palmertier* v. *Huxford*, 4 Denio, 166; *Phillips* v. *McKellor*, 12 Wk'ly Dig. 521; *Crouse* v. *Hunter*, 28 N. Y. 389; *Baker* v. *Union Ins. Co.*, 43 id. 284, 288; *Cobb* v. *Dows*, 10 id. 336, 345; *Bonner* v. *America, etc., Co.*, 81 id. 469; *Scott* v. *Middletown, etc., R. R. Co.*, 86 id. 200; *Krumm* v. *Beach*, 25 Hun, 294; *Bryant* v. *Moore*, 26 Me. 84; *Sortwell* v. *Frost*, 122 Mass. 184; *Cook* v. *Tullis*, 18 Wall. 332; *Commercial*

Opinion of the Court, per ANDREWS, J.

*B'k* v. *Warren*, 15 N. Y. 577; *Farmer's, etc., Co.* v. *Walworth*, 1 id. 433; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 id. 87, 88; *Baker* v. *Union, etc., Ins. Co.*, 43 id. 289; *Brewster* v. *Baker*, 16 Barb. 613; *Tilton* v. *Nelson*, 27 id. 595; *Garnor* v. *Bird*, 57 id. 277; *Storrs* v. *Barker*, 6 Johns. Ch. 166; *Sherman* v. *McKeon*, 38 N. Y. 267; *Thompson* v. *Blanchard*, 4 id. 303, 310; *Brainard* v. *Duning*, 30 id. 211.)

*Matthew Hale* for respondent. The actual notice given to the agent made it immaterial whether the mortgage was properly filed or refiled. (*F. L. & T. Co.* v. *Hendrickson*, 25 Barb. 484; *Hill* v. *Beebe*, 3 Kern. 556; *Lewis* v. *Palmer*, 28 N. Y. 271; *Gildersleeve* v. *Landon*, 73 id. 609; *B'k of U. S.* v. *Davis*, 2 Hill, 451; *Sutton* v. *Dillaye*, 3 Barb. 329; *Ingalls* v. *Morgan*, 6 Seld. 178; *Reed* v. *Gannon*, 50 N. Y. 345; *Goodenough* v. *Spencer*, 15 Abb. [N. S.] 248, 255.) The proof of conversion is ample. (*Fallon* v. *Durant*, 60 How. Pr. 178; *McEnroe* v. *Decker*, 58 id. 250; Code of Civil Proc., § 500; *Holmes* v. *Wood*, 88 N. Y. 650.) Any assumption of right over property in exclusion or defiance of plaintiff's right, is a conversion. (*Bristol* v. *Burt*, 7 Johns. 254; *Murray* v. *Burling*, 10 id. 172; *Reynolds* v. *Shuler*, 5 Cow. 323; *Connah* v. *Hale*, 23 Wend. 462.) A mortgagor cannot, by changing the appearance of the property, or mixing it with other property, by adding to or subtracting from it, impair the title of the mortgagee. (*Dunning* v. *Stearns*, 9 Barb. 630; *Willard* v. *Rice*, 11 Metc. 493; *Southworth* v. *Isham*, 3 Sandf. 448; *Adam* v. *Wilds*, 107 Mass. 123; *Simmons* v. *Jenkins*, 78 Ill. 479.) The assignment being absolute on its face, and conveying to plaintiff legal title to the claim, no inquiry as to its consideration or motive is permissible. (*Sheridan* v. *Mayor*, 68 N. Y. 30, 32; *Stone* v. *Frost*, 61 id. 614; *Allen* v. *Brown*, 44 id. 228.)

ANDREWS, J. The chattel mortgage from Crane to Hayward, included, among other articles, the three machines for the conversion of which this action is brought. They are

described in the mortgage by numbers and by other descriptive particulars, and the mortgage stated that the property was then in the possession of the mortgagor, in the upper mill known as the tow mill, in Rotterdam. The mortgagor, when the mortgage was executed, resided in the town of Rotterdam, and the machinery mortgaged was then in his flax mills in that town. The mortgage was dated November 11, 1871, and was filed on the same day in the town clerk's office of the town. It was given to secure the payment by Crane to Hayward of $6,000 with interest in one year from its date, the consideration being a loan of that amount made by Hayward to Crane at the date of the mortgage. The mortgagee, on the 14th of October, 1872, attempted to renew the mortgage by refiling a copy thereof, with a statement indorsed thereon, exhibiting his interest in the property by virtue of the mortgage; but the copy was not an exact copy of the original mortgage, there being some slight variance between them. It was, however, accurate as to the statement of the debt for which the mortgage was given, and of the property embraced in the mortgage, and the statement, which was signed by the mortgagee, correctly set forth the amount then due upon the mortgage. The referee, however, having found that by reason of the fact that the alleged copy was not an exact transcript of the original mortgage, the refiling did not operate to renew it, this finding must be taken to be the law of the case, and cannot be questioned by the respondent upon this appeal.

The original defendant in the action was one of the firm of A. H. Hart & Co., and claimed title to the machinery in question under a purchase made by that firm from Crane in April, 1873, and one of the questions in the case is whether, at the time of such purchase, the firm of A. H. Hart & Co. had notice of the original mortgage, and that it was then a subsisting lien upon the property. By the third section of chapter 279, Laws of 1833, relating to the filing of chattel mortgages, it is provided that a mortgage filed under the first section of the act, shall cease to be valid as against the creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith,

after the expiration of one year from the filing thereof, unless it is refiled as provided in that section. The object of the statute, requiring mortgages of personal property to be filed, is the same as that of the registry acts respecting mortgages of real estate, viz.: to prevent imposition upon subsequent mortgagees and purchasers (DENIO, J., *Meech* v. *Patchin*, 14 N. Y. 71), and if at the time of the purchase by Hart & Co. they had notice of the mortgage to Hayward, such notice stands in the place of filing, and their purchase would be subject to the lien of the mortgage. It appears by the evidence that immediately prior to the purchase of the machines by the firm of Hart & Co. their agent saw and read the original mortgage and the copy filed as a renewal in the town clerk's office of Rotterdam, but was informed by the mortgagor that it did not cover the machines in question, and in support of the statement he referred to the fact that the numbers on the machines which he was about to sell did not correspond with the numbers of the machines stated in the mortgage. The agent being satisfied with this information, without making further inquiry, or going to the mill to ascertain whether the machines covered by the mortgage were still there, concluded the purchase, Crane receiving for the machines $3,000 in cash and three other machines of the same general character as those described in the mortgage. There is no ground to impute any actual bad faith to Hart & Co. in the purchase of the property, nor is there any reason to question that they had no actual knowledge at the time that the machines purchased by them were covered by the mortgage. It appears that when the mortgage was taken by Hayward he examined the property, and there were at that time numbers upon the several machines, upon brass plates attached to them, corresponding with the numbers in the mortgage, but at the time of the purchase by Hart & Co. these numbers had been removed, and the only numbers then upon the machines were numbers which had been cast therein at the time they were made and which did correspond with the numbers mentioned in the bill of sale to the firm. How the numbers came to be changed does not distinctly appear. It

may be inferred, however, that it was done by Crane with the intention of defrauding the purchasers. But it was not essential to charge the purchasers with notice of the plaintiff's mortgage that they should have actually known at the time of the purchase that the machines were those embraced in the mortgage. They had actual notice of the instrument executed to Hayward, and the paper filed as a copy of the mortgage although not accurate in every respect, was, in connection with the statement accompanying it, notice to them that the original mortgage between the parties was a subsisting security, and that the debt which it was given to secure was unpaid.

The statute which declares that unless a mortgage is refiled, it shall cease to be a lien as against subsequent purchasers in good faith of the mortgaged property, does not relieve the purchaser who has actual notice of a mortgage, which at the time it was executed correctly described the property mortgaged, but the appearance of which, for purposes of deception, and without the fault of the mortgagee, has been changed by the mortgagor. The language of the third section of the statute in this respect is the same as the language of the first section, requiring the original filing of a chattel mortgage, and it could not be claimed that if the purchase had been made before the expiration of the year from the original filing, the lien of the mortgage was lost as against a purchaser upon whom such a fraud had been practiced. Hart & Co. were chargeable in law with notice of the mortgage and with the legal rights of the mortgagee thereunder, notwithstanding the deception, and they cannot transfer the loss resulting therefrom from themselves to the mortgagee, so long as they had actual notice of the mortgage.

In another view also the objection of want of notice cannot prevail. The purchasers purchased property of the same general description, aside from the numbers, as that contained in the mortgage. Knowing of the mortgage and of the attempt to renew it, they were put upon inquiry, and this amounts to actual notice of the mortgage, unless they pursued the inquiry with diligence, and were unable thereby to ascertain the exist-

ence of the lien. ( *Williamson* v. *Brown,* 15 N. Y. 354.) The purchasers in this case relied alone upon the statements of the mortgagor in respect to the lien. They did not see the machines purchased by them until after they had paid the purchase-money. They made no inquiry of the mortgagee, nor did they go to the mills where the mortgaged property was stated in the mortgage to be, to ascertain whether there were machines there corresponding to those described in the mortgage. Under the circumstances it cannot, we think, be held as matter of law that they used due diligence in prosecuting the inquiry to ascertain whether the property purchased was covered by the mortgage.

It is claimed, however, by the defendant that certain facts proved and found upon the trial, constitute a ratification by Hayward, of the sale by Crane, or estop him and his assignee from claiming title under the mortgage. The referee found that after the transfer and exchange of machinery between Crane and the firm of Hart & Co., the machines received by Crane from the firm, were stored by him with other machinery covered by the mortgage, and that Crane in March, 1876, obtained two policies of insurance thereon for $1,750 each, which were payable "in case of loss, to John T. K. Hayward, mortgagee, as his interest may appear; balance, if any, to assured," and that the policies were forwarded to, and received and held by, Hayward, and that in the fall of 1876, while the policies remained in force, the insured property was destroyed by fire. It is further found that in June, 1877, Hayward came from Missouri, where he resided, to this State, for the purpose of collecting the insurance, and that he then ascertained all the facts relating to the sale and exchange of the machinery by Crane to and with the firm of Hart & Co., and that after acquiring such knowledge, Hayward obtained a power of attorney and an assignment from Crane, of all his rights and interest in the policies of insurance, and subsequently compromised the claims, receiving on the compromise, about the sum of $1,300. It is insisted that this dealing by Hayward in respect to the policies of insurance, and the com-

promise and collection of the loss, was a ratification of the wrongful act of Crane in selling the mortgaged property. But we are of opinion that this contention is not well founded. The description of the insured property in the policies of insurance, was in general terms, and did not convey any notice to Hayward that it was upon any property other than that which was covered by his mortgage, and when he first ascertained the fraud committed by Crane, the insured property had been destroyed by fire. Hayward had an interest as mortgagee, in the claim against the insurance companies, for the policies embraced not only the machines exchanged by Hart & Co. with Crane, but also the machinery covered by the mortgage other than the three machines in question. Before making the compromise with the insurance companies, Hayward informed Hart & Co. of his claim upon the three machines then in their possession, and demanded them as mortgagee, and he also offered to transfer to Hart & Co. the claim against the insurance companies, in case they would surrender the mortgaged property. Hart & Co. having declined this offer and refused to surrender the machinery, Hayward was justified in adjusting the loss upon the policies, in his character both as mortgagee, and as assignee of Crane. The legal title to the insurance money beyond the portion which belonged to Hayward as mortgagee, was in Crane. Hart & Co. could not claim any portion of it, at least until after a rescission of the contract of exchange between them and Crane. They did not rescind this contract, but on the contrary insisted upon retaining the mortgaged property. The defendant has been allowed in diminution of damages for the conversion, the whole amount received by Hayward on the insurance policies, and under the circumstances we think there was no ratification either in fact or law, of the wrongful acts of Crane arising out of this transaction, and no estoppel upon Hayward from asserting his claim under the mortgage.

It further appears that after adjustment of the loss, Hayward sold the remnants of the property remaining from the fire, consisting of old iron, for the sum of about $70, and this

is also claimed to have been a ratification of the acts of Crane. What proportion of the sum received upon this sale, represented the mortgaged property, does not appear. The most that Hart & Co. could claim in respect to it, is that Hayward should account for the proportion of the sum received on the sale, which represents the machines sold by them; and the whole sum so received, was also credited in the action in diminution of damages.

These are the only questions in the case, and we think the judgment should be affirmed.

All concur, except RUGER, Ch., J., not voting.

Judgment affirmed.