CLARK v. McDUFFIE.

(Supreme Court, General Term, Third Department. December 8, 1892.)

1. CHATTEL MORTGAGE—DELAY IN FILING—NOTICE.
    In an action by a mortgagee of personal property against a purchaser at sheriff's sale, for the conversion of the property, it appeared that the mortgage was executed after the mortgagor incurred the debt for which the judgment was rendered, and was filed before execution was issued thereon, and that prior to the sale defendant had actual notice of the mortgage. *Held,* that plaintiff was entitled to recover, though there was unreasonable delay in filing the mortgage.
2. SAME—CONVERSION—MEASURE OF DAMAGES.
    In such case plaintiff had not taken possession, and the mortgage debt was not due, at the time of the sale, but after the sale he took possession of the property under a clause authorizing him to do so, and to sell the same and retain the amount of the mortgage, with interest, expenses, and charges, and pay the surplus to the mortgagor. The amount of the mortgage was $275, and the value of the property $418. *Held,* that the measure of plaintiff's damages was the amount of his debt, and not the value of the property.

Appeal from Montgomery county court.

Action by William Clark against Ellsworth McDuffie for the conversion of certain personal property on which plaintiff claimed a mortgage

lien. The amount of the mortgage was $275, and the value of the property as found by the jury was $418. From an order directing a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

. H. M. Eldredge, (Westbrook & Borst, of counsel,) for appellant.

Weller & Moore, for respondent.

HERRICK, J. The chattel mortgage was given on the 31st day of August or the 1st day of September, 1891. It was filed on the 5th day of September, 1891. A judgment was obtained against the mortgagor September 4, 1891, in the justice's court. On the 7th an execution was issued against the property of the mortgagor. A levy was made on the mortgaged property September 9, and it was sold September 28, 1891, and the defendant became the purchaser at such sale. Before the property was sold the defendant was notified of the existence of the plaintiff's mortgage upon the property, and the plaintiff's agent forbade the sale because of the existence of such mortgage. The mortgage was given for a good and valuable consideration. The only attack upon its validity is that it was not filed. The court submitted the question to the jury as to whether the mortgage was filed within a reasonable time after its execution, and they found that it was not. As a question of fact, I doubt very much whether the jury reached a correct conclusion in that respect. The mortgagee lived some three miles from the town clerk's office, and it does not seem to me that the delay was unreasonable. Be that as it may, however, there are other questions presented here which determine the case.

The indebtedness for which the judgment was obtained was incurred prior to the execution of the mortgage. The execution was not issued until after the mortgage was filed. The defendant had notice of its existence prior to his purchase, and, having actual notice of its existence, it was, as against him, a valid mortgage. Gildersleeve v. Landon, 73 N. Y. 609; Lewis v. Palmer, 28 N. Y. 271; Mack v. Phelan, 92 N. Y. 20. It is true that none of the above-cited cases were cases where parties had purchased at a sale under an execution, but I can see no difference in principle between one who purchases direct from the mortgagor with notice and one who purchases at an execution sale with notice. The object of the statute, as was said in Mack v. Phelan, 92 N. Y. 25, "is to prevent imposition upon subsequent mortgagors and purchasers," and "notice stands in the place of filing," and the purchase would "be subject to the lien of the mortgage." Here no imposition is practiced upon the purchaser. He has actual notice, and before the execution under which he purchases becomes a lien the mortgage is filed. This is not the case of one who gives credit to the mortgagor after the execution of the mortgage, and before it is filed. Neither is it like the case of Best v. Staple, 61 N. Y. 71, where the execution was issued and levy made before the mortgage was filed, or the mortgagee had taken possession, so that the lien of the judgment creditor was perfected before that of the mortgagee. In that respect it will be seen that it differs from

the case now before us. Here the indebtedness was a pre-existing one, and before a levy was made and a lien acquired the mortgage was filed. I do not think the sale to the defendant divested the plaintiff of his right of possession under the mortgage; but it did pass to the purchaser all the interest which the mortgagor had in the property. The mortgagee not having taken possession, and the debt which the mortgage was given to secure not being due, the mortgagor had an interest which he could sell or assign.

After the sale under the execution the plaintiff took possession of the mortgaged property under a clause in the mortgage authorizing him so to do. The mortgage authorized him to take possession; to sell and dispose of the same at either public or private sale, and out of the proceeds of the sale to retain the amount of the mortgage, with interest and all expenses and charges; and to pay the surplus, if any, to the mortgagor, his executors, administrators, and assigns. All the plaintiff could claim, then, on his mortgage, was the amount of his debt and interest. All beyond that would belong to the defendant, who stood in the place of the mortgagor. And when the defendant converted the mortgaged property, as claimed by the plaintiff, it seems to me that the damage done to the plaintiff was not to be measured by the value of the property, but by the amount of his debt, with interest and his expenses, if any, in caring for the property, and that the trial court erred in charging the jury that the plaintiff could recover for the full value of the property; and for that error the judgment should be reversed, and a new trial granted, costs to abide the event. It is unnecessary to determine whether there was a mistrial in the manner of submitting the case to the jury.

MAYHAM, P. J., and PUTNAM, J., concur in the result.