NATIONAL SURETY COMPANY, Appellant, *v.* GOTHAM GARAGE COMPANY, Respondent.

Supreme Court, Appellate Term, First Department, June 10, 1926.

Liens — chattel mortgage duly filed effective as notice to garage proprietor having lien on automobile for repairs under Lien Law, § 184 — action for conversion of automobile against which plaintiff's assignor held chattel mortgage from purchaser — defendant received automobile for repairs after mortgage was duly filed — automobile was sold to satisfy defendant's lien for repairs and storage without giving notice of sale to chattel mortgagee — fact that mortgage was on record was sufficient notice to defendant within meaning of Lien Law, § 201, requiring notice of sale to mortgagee — defendant liable for conversion of automobile.

Although a garage proprietor who operated a place for the storage or repair of automobiles has a lien under section 184 of the Lien Law superior to the lien of a chattel mortgage, a chattel mortgage duly filed is still effective as notice to the lienor of an interest in the property within the meaning of section 201 of the Lien Law.

Plaintiff's assignor, to whom the purchaser of an automobile gave a chattel mortgage to secure the payment of eight promissory notes to cover the purchase price of the vehicle, was entitled to be given notice as required by section 201 of the Lien Law of the sale of the vehicle by the defendant, a garage proprietor, claiming a lien for repairs and storage under section 184 of the Lien Law, where it appears that the mortgage was duly filed in the office of the register of the county of New York, and except for the lien created by the owner of the vehicle in delivering it to the defendant for repairs on November 10, 1923, plaintiff's assignor, by reason of the default of the owner in the payment of the installments due under the mortgage, became the absolute owner of the vehicle on and after September 1, 1923; therefore, the sale of the automobile at auction to satisfy defendant's lien pursuant to a notice mailed to the owner and an advertisement published in a newspaper in the city of New York was ineffective as against plaintiff, and defendant is liable for conversion.

The mortgage being valid during the time in question, was a sufficient notice to the garage proprietor of the interest of plaintiff's assignor in the automobile as contemplated by section 201 of the Lien Law requiring the service of notice of sale on any person who shall have given to the lienor notice of an interest in the property which is subject to the lien.

Moreover, the defendant, after having been informed by the owner of the automobile that he still owed money on account of the purchase price of the vehicle and did not have absolute title thereto, should have inquired as to the respective rights of all parties concerned.

BIJUR, J., dissents, with memorandum.

APPEAL from a judgment entered in the Municipal Court, First District, Borough of Manhattan, dismissing the plaintiff's complaint upon the merits after trial.

*Carl John Herkert,* for the appellant.

*Joseph & Zeamans* [*Harold R. Zeamans* of counsel], for the respondent.

DELEHANTY, J.   The action was brought to recover damages for the conversion of a certain automobile.   It appears that one Selig Merber executed to the Prudent Finance Corporation a chattel mortgage to secure the payment of an indebtedness to the Prudent Finance Corporation of $1,000 evidenced by eight promissory notes.   The chattel mortgage was dated July 5, 1923, and was filed in the office of the register of the county of New York on July 9, 1923, and duly indexed in such office.   The chattel mortgage recites that it covers 1 Mercer speedster automobile, motor No. 4426, series No. 4, the car being registered in the State of New York, registry No. 971–501 for the year 1923.   Thereafter said Merber failed to pay certain of the notes as they became due, and under the provision of the mortgage there became due on September 5, 1923, the sum of $900, which sum remains unpaid.   It is stipulated that the value of the automobile on that date was approximately $700.

On November 10, 1923, Merber brought to the premises of the defendant, which was a duly authorized and licensed garage corporation conducting a business as such at 102 and 104 West Forty-sixth street in the city of New York, a Mercer speedster automobile which contained on a brass plate attached to the dashboard under the hood, and also on the rear end of the chassis, the No. 4426, series No. 4.   On the automobile on the left front motor leg and on the plate that covers the valve guides there was also the No. 4063.   The State registration No. 971–501, 1923, was also upon such automobile.   The said Merber requested the defendant to make certain repairs to said automobile consisting of the replacement of certain parts and repairing the clutch of said car, and left the car with said defendant for such purposes.   It is stipulated that the fair and reasonable cost of such repairs was the sum of seventy-two dollars and sixty-five cents.   The defendant claims a lien upon such machine not only for such repairs, but also for the storage of the automobile from the 23d day of November, 1923, to the 23d day of January, 1924, at the rate of one dollar and fifty cents per day, which was stipulated is a fair and reasonable rate for storage, making a total of one hundred and sixty-four dollars and fifteen cents.   It further appears that about December 8, 1923, the father of Selig Merber, representing Selig Merber, called

at the place of business of the defendant and stated that Selig Merber would be around and pay his bill and take the car out; that thereafter Selig Merber called at the place of business of the defendant shortly before Christmas and had a conversation with a Mr. Salzberg, the president of the defendant; that in such conversation Merber told the said Salzberg that he was not able to take care of the bill for repairs of the car at that particular time as he wanted to raise some money first to pay the finance corporation and then he would take care of the car; that Salzberg said: " Well, we don't know what these cars are and we can't afford to hold this indefinitely," and that " unless you take this out right away we are going to sell it at public auction; " that said Merber then said: " I think you are very foolish to sell that car at public auction, because I don't own the car. I bought the car through a finance corporation and I still don't own the car. I still owe money on the car and the car does not belong to me and I imagine you are going to get in an awful lot of trouble if you sell that car," and Salzberg said: " Well, we know what to do." Thereafter the amount of the bill of the defendant not having been paid the defendant sent by registered mail to Selig Merber at 155 West One Hundred and Nineteenth street, New York city, a notice of sale dated December 28, 1923. Such notice was mailed on December twenty-eighth and thereafter a registry receipt signed " Selig Merber by Ida Merber," the signature of the mother of Selig Merber, was received by the defendant. This notice stated in substance that the defendant had a lien upon one Mercer car, motor No. 4063, stored with the defendant at the request of and with the consent of the owner of the automobile for storage and repair, and that the amount of such lien was required to be paid on or before the 7th day of January, 1924, and that unless said lien was paid to the undersigned or to J. J. Friedman, auctioneer, on or before said date, said property would be sold at public auction by J. J. Friedman, auctioneer, on the 23d day of January, 1924, at eleven-fifteen A. M. at 102–104 West Forty-sixth street, city of New York. Thereafter, pursuant to such notice, an advertisement was inserted in the New York *Commercial* on January 8 and January 23, 1924. Such advertisement appeared under the headline " auction sale " and was to the effect that the defendant and the auctioneer would sell at public auction, one Mercer car, motor No. 4063, for the account of Selig Merber, to satisfy a lien, at No. 102 West Forty-sixth street, borough of Manhattan, on January 23, 1924, at eleven-fifteen A. M. Thereafter, pursuant to such notice and advertisement, the auctioneer on the day and at the time and place indicated sold the automobile in question at public auction and realized the sum of

$150, which amount was turned over by the auctioneer to the defendant. No notice of such sale was given to any one other than above set forth. It appears that the Prudent Finance Corporation was unable to locate either the automobile in question, or Selig Merber at 233 West Seventy-second street, which was his address given in the chattel mortgage, and the only address which the corporation had for Selig Merber. The defendant had given 155 West One Hundred and Nineteenth street as the address of Selig Merber. On January 22, 1924, the Prudent Finance Corporation assigned the chattel mortgage and the notes therein to the plaintiff, the National Surety Company, in consideration of the sum of $640.

The chattel mortgage made to the Prudent Finance Corporation was during the time in question an existing lien upon the automobile. In fact on and after September 1, 1923, owing to the default of Selig Merber in the payment of the installments due under the mortgage, the Prudent Finance Corporation became the absolute owner of the mortgaged automobile, and except for section 184 of the Lien Law, Selig Merber would have had no authority to create a lien upon the automobile. (*Barrett Mfg. Co.* v. *Van Ronk*, 212 N. Y. 90, 94.) As the mortgagor in possession, however, Selig Merber was authorized to make the agreement with the defendant for the repairs, etc., and thus create a lien in favor of the defendant therefor. (Lien Law, § 184.) Under the established law of this State, the lien of the defendant was prior or superior to the rights of the Prudent Finance Corporation as mortgagee. (*Johanns* v. *Ficke*, 224 N. Y. 513, 521; *Wolfman Co., Inc.,* v. *Eisenberg*, 116 Misc. 43; *Terminal & Town Taxi Corp.* v. *O'Rourke*, 117 id. 761; *Bardasch* v. *Kalisch*, 118 id. 119; *Willys-Overland* v. *Prudman Automobile Co.*, 196 N. Y. Supp. 487.)

The right of the plaintiff to maintain this action for conversion, therefore, can be based only upon some illegal action taken by the defendant in the disposition or sale of the automobile.

Much testimony was taken on the question as to what was the motor number of the automobile, the defendant claiming that the motor number was 4063, and the plaintiff claiming that the motor number was 4426. In view of the evidence at the trial it is immaterial what the motor number was except for the purpose of identifying the automobile covered by the chattel mortgage. There is no question but that the automobile mortgaged by Selig Merber was the same automobile which he took to the defendant's garage, and on which the defendant claims a lien and which it sold to satisfy such lien. Notwithstanding the fact that the defendant had a valid lien upon the automobile, I am of the opinion that it illegally disposed of the automobile and committed an act of conversion when

it sold the automobile to satisfy the lien. Sections 201 and 202 of the Lien Law provide the method for the enforcement of defendant's lien.

Whether or not there was a conversion of the automobile by the sale thereof by defendant depends upon the construction to be given to the first paragraph of section 201 of the Lien Law. Such section prescribes in substance that the notice of sale shall be served upon any person who shall have given to the lienor notice of an interest in the property which is subject to the lien. The rulings of the trial justice were to the effect that the chattel mortgage to the Prudent Finance Corporation though duly filed was not such a notice to the lienor of the said corporation's interest in the automobile as was contemplated by such paragraph, and that, therefore, no notice of sale was required to be served upon such corporation by the defendant. Although it may be the law in this State that a lien under section 184 of the Lien Law is superior to that of the lien of a chattel mortgage, yet a chattel mortgage duly filed is still effective as notice to the lienor. In the present case the Prudent Finance Corporation was unable to locate either the mortgagee or the mortgaged automobile. In what other way then was it possible for the Prudent Finance Corporation to notify the unknown lienor of the Prudent Finance Corporation's right in the automobile than by the chattel mortgage? I am of opinion that as the chattel mortgage to the Prudent Finance Corporation was properly filed and was valid during the time in question such mortgage was notice given to the lienor of the Prudent Finance Corporation's interest in the property (the automobile) as contemplated by the last clause of the first paragraph of section 201 of the Lien Law, and that the defendant, therefore, under such provision of law should have served a notice of sale upon the Prudent Finance Corporation. Moreover, the defendant in this action had actual notice before Christmas, 1923, that Selig Merber was not the owner of the automobile; that Selig Merber had bought the automobile through the Finance Corporation and still owed it money on account of the purchase price, and that Selig Merber, therefore, did not own the car. Such actual notice to the defendant should have put it on inquiry as to the respective rights of the Prudent Finance Corporation and Selig Merber in the automobile. (*Mack* v. *Phelan*, 92 N. Y. 20.)

Judgment reversed and a new trial ordered, with thirty dollars costs to appellant to abide the event.

Present: BIJUR, DELEHANTY and WAGNER, JJ.

BIJUR, J. (dissenting). I dissent on the ground that the language of section 201 of the Lien Law, requiring notice of sale for satis-

faction of the lien to be served " upon any person who shall have given to the lienor notice of an interest in the property subject to the lien " was not intended to comprehend mortgagees or other persons occupying similar relation to the property, as such persons could have been clearly and specifically described had that been the intention.    It is to be remembered that the notice has no relation to the establishment or validity of the lien, but is a mere regulatory measure relating to the sale.